978 F.2d 1258
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Leon CLEVERLY, Plaintiff-Appellant,
v.
DIGITAL EQUIPMENT CORP. Defendant-Appellee.
 No. 92-3147.
 United States Court of Appeals, Sixth Circuit.
 Nov. 3, 1992.
 
 Before DAVID A. NELSON and BATCHELDER, Circuit Judges, and CELEBREZZE, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 Plaintiff Leon Cleverly ("the employee") brought suit against his former employer, Digital Equipment Corporation ("the employer"), alleging: 1) age discrimination in violation of 29 U.S.C. § 623 et seq.; 2) constructive discharge based upon age discrimination; 3) age discrimination in violation of O.R.C. § 4112.02(N) and § 4112.99; and 4) intentional infliction of emotional distress.
 
 
 2
 The employee first filed an EEOC claim and, after the requisite time had passed, filed this action in the United States District Court for the Northern District of Ohio, Eastern Division. The district court granted the employer summary judgment on the employee's federal claims upon finding that the employee failed to establish a prima facie case of age discrimination. Absent the existence of a substantial federal claim, the court dismissed the employee's pendant state claims without prejudice for lack of jurisdiction.
 
 
 3
 The employee appeals the district court's entry of summary judgment to the employer on the federal claims. The appeal specifically challenges the propriety of the district court's award of summary judgment on the employee's claims of constructive discharge and age discrimination. Our review compels affirmance.
 
 
 4
 The employee began working for the employer in 1983 as a senior sales representative in the greater Cleveland area. By 1989, the nearly 60 year old employee, through raises and promotions, had been elevated to the post of software service consultant in the company's Detroit office.
 
 
 5
 In an August 1989 reorganization, the employer phased out its general business division, which included the Detroit office. While many workers were laid off, the employee was reassigned as a "sales executive" in the employer's Cleveland office.
 
 
 6
 The district manager of the Cleveland office, Lou Young, appeared displeased to be forced to absorb the employee and his high salary into the Cleveland operation. Young apparently referred to the employee as "a square peg in a round hole." The employee interpreted this remark as a reference to his age. Young, nevertheless, fulfilled his obligation to the employer by assigning the employee to the new and experimental Youngstown market. De Wayne Lee of the Cleveland operation became the employee's immediate supervisor. The employer, however, assigned no established "house accounts" to the employee and denied his requests for such assignments. Because Youngstown was a new market, the employer initially failed to provide the employee with office facilities in Youngstown, forcing the employee to commute 150 miles daily. To avoid this commute, the employee ultimately moved to suburban Youngstown and worked out of the employer's local repair warehouse, without access to a conference area, telephone listing, or secretarial support. In response to his complaints, the employer eventually gave the employee a car phone and an expense budget of $1,000 per week to compensate for the deficiencies in the Youngstown work environment.
 
 
 7
 The employer initially assigned the employee a sales goal of $500,000 for the 1990 fiscal year and required him to routinely make accurate monthly sales forecasts. Unfortunately, the employee had difficulty producing sales in the depressed economic climate of the undeveloped Youngstown market. Nonetheless, by March 1990, the employee began to improve his sales record and by the June 1990 close of the fiscal year, he exceeded his original $500,000 sales goal. In the interim, however, management had increased his sales goal to $1,000,000, thus showing plaintiff, in June 1990, as falling $450,000 short of his target.
 
 
 8
 Believing that the employer expected sales people to forecast sufficient sales to meet assigned sales goals, the employee produced inaccurate and inflated sales forecasts, in contravention to the employer's stated policy of routinely making accurate monthly sales forecasts. Though memoranda from management criticized the employee's inaccuracies and apparently poor sales volume, his fiscal 1991 sales goal was nonetheless increased to more than $1,000,000. The employee complained about the unrealistic goal, but management took no action and the employee continued to submit inaccurate and inflated forecasts.
 
 
 9
 During the fall of 1990, the employer placed the employee in phase I of its corrective action program because of his deficient sales volume and inaccurate forecasts. Management made it clear that if the employee failed to meet the goals of the corrective action program, he would be terminated.
 
 
 10
 In spite of this, the employee's performance continued to decline and in January 1991 he reached the third and final phase of the corrective action program. At the time, he had produced only $86,290 of his most recent sales forecast of $977,000. In February 1991, supervisor De Wayne Lee told the employee that Young had ordered his termination, but that Lee wanted to try to work something out. The employee informed Lee that he had contacted an attorney. Lee responded by orchestrating a meeting between the employee and Young. Lee also contacted the personnel manager, Kathleen Darnell, in an effort to rectify the situation and to notify her that the employee had sought legal counsel. Darnell relayed the information to Young via a memo in which she said: "I believe we are exposed as a corporation, and my job is to protect Digital [the employer] from such exposure." The memorandum also disclosed that, in her opinion, "Leon [the employee] is being punished for a situation that he cannot totally control." Darnell suggested remedial measures which Young might take to diffuse the situation.
 
 
 11
 In the meantime, the employee met with another supervisor and obtained a promise that the employee would be given a new supervisor, as well as established house accounts. The employee also sought removal from the corrective action program. At the meeting between the employee, Young and Lee, Young orally agreed in principal to such a plan. Lee confirmed their re-evaluation of the employee's plight in a written memorandum on the same day, February 20, 1991, but indicated that until a final agreement was constructed, the employee remained under the effect of the corrective action plan. Lee promised to submit the final document within two days, on February 22, 1991.
 
 
 12
 Lee proceeded to prepare a plan whereby the employee would have nine established house accounts, would no longer be under the effect of the corrective action program and would take part in a two year territorial investment strategy with realistic sales goals. The new plan, however, did not give the employee a new supervisor. Lee submitted the plan to Young by Friday, February 22, but Young was still reviewing the plan beyond the deadline and the employee did not receive it that day. On Monday, February 25, 1991, the employee resigned. The employer replaced the employee with a salesperson under the age of 40.
 
 I.
 
 13
 The employee challenges the district court's entry of summary judgment on both his claims of constructive discharge and age discrimination. The employee complains that it was improper for the court to enter summary judgment on his charge of age discrimination when defendant's motion for summary judgment purportedly alleged only that the employee's constructive discharge claim failed as a matter of law. The employee also charges, in any event, that the district court erred in awarding summary judgment on the constructive discharge claim.
 
 
 14
 It should first be noted that defendant's motion for summary judgment clearly addresses the employee's age discrimination claim. Defendant's motion reads in relevant part:
 
 
 15
 There are no material issues of fact in dispute, and Digital [the employer] is entitled to summary judgment because plaintiff cannot meet his burden to prove a prima facie case of age discrimination.
 
 
 16
 An appellate court must review de novo a grant of summary judgment. Bills v. Aseltine, 958 F.2d 697, 701 (6th Cir.1992); Pinney Dock and Transport Co. v. Penn Central Corp., 838 F.2d 1445, 1472 (6th Cir.1988), cert. denied, 488 U.S. 880 (1988). In a de novo review of the propriety of the district court's ruling, this court must consider the merits of the motion in their entirety. Choctaw Nation v. United States, 119 U.S. 1, 30 (1886). Summary judgment is deemed appropriate where all of the pleadings, depositions, etc. show there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Beddia v. Goodin, 957 F.2d 254, 257 (6th Cir.1992); Canderm Pharmacal, Ltd. v. Elder Pharmaceuticals, Inc., 862 F.2d 597, 601 (6th Cir.1988). All inferences must be construed in the light most favorable to the party opposing the motion. Davidson & Jones Dev. Co. v. Elmore Dev. Co. Inc., 921 F.2d 1343, 1349 (6th Cir.1991). Where the plaintiff fails to put forth an essential element of his cause, the court must enter summary judgment in favor of the moving party as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 322-323 (1986).
 
 
 17
 Plaintiff brought two federal claims: 1) discrimination with respect to the terms and conditions of employment because of age; and 2) constructive discharge because of age. In its motion for summary judgment, defendant claimed there was no material issue in dispute in the entire case because plaintiff did not establish a prima facie case of age discrimination.
 
 
 18
 29 U.S.C. § 623(a) provides that it is unlawful for an employer to:
 
 
 19
 (1) ... discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age;
 
 
 20
 To put forth a rebuttable presumption of unlawful employment discrimination on the basis of age, the plaintiff must show:
 
 
 21
 1) he was a member of a protected class (age 40 to 70);
 
 
 22
 2) he was subjected to adverse employment action;
 
 
 23
 3) he was qualified for the position;
 
 
 24
 4) he was replaced by a younger person.
 
 
 25
 Simpson v. Midland-Ross Corp., 823 F.2d 937, 940 (6th Cir.1987), adopting the test set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973). After plaintiff raises this rebuttable presumption of discrimination, the defendant employer has the burden to provide a legitimate nondiscriminatory reason for its actions. Simpson v. Midland-Ross Corp., 823 F.2d at 940. The employee then must show, by a preponderance of the evidence, that the employer really had a discriminatory motive. Gagne v. Northwestern Nat. Ins. Co., 881 F.2d 309, 312-14 (6th Cir.1989); Simpson v. Midland-Ross Corp., 823 F.2d at 940.
 
 
 26
 The district court found that plaintiff failed, as a matter of law, to present a prima facie rebuttable presumption of age discrimination because he failed to put forth evidence of an adverse employment action.
 
 
 27
 In his suit, plaintiff styled his resignation as a constructive discharge and asserted that it was the result of a series of adverse employment actions purportedly initiated because of his age. To demonstrate a constructive discharge, the employee would have had to show that "working conditions would have been so difficult or unpleasant that a reasonable person in the employee's shoes would have felt compelled to resign." Yates v. Avco Corp., 819 F.2d 630, 636-637 (6th Cir.1987); Geisler v. Folsom, 735 F.2d 991, 996 (6th Cir.1984). In making a determination, the court must look at the employer's intent and the foreseeable impact of the employer's conduct on the employee. Wheeler v. Southland Corp., 875 F.2d 1246, 1249-1250 (6th Cir.1989); Henry v. Lennox Indus., Inc. 768 F.2d 746, 752 (6th Cir.1985).
 
 
 28
 The district court found that the employee's working conditions were not so unpleasant and difficult to force a reasonable person to resign. While the record shows that plaintiff had probably suffered from some unfair and difficult circumstances as a Digital employee, by February 1991, when he resigned, the employer had agreed in principal to: 1) resolve the employee's grievances in his favor; 2) restructure his sales goals; 3) give him established accounts to help improve his sales record; and 4) erase his discipline record. Just as the company was on the verge of formally initiating these concessions, the employee resigned. Where, as here, an employee fails to even attempt a reassignment or new position offered to improve a troubling situation, a court may find against constructive discharge. Wilson v. Firestone Tire & Rubber Co., 932 F.2d 510, 514-515 (6th Cir.1991); Garner v. Wal-Mart Stores, Inc., 807 F.2d 1536, 1539 (11th Cir.1987). Thus, this court finds the district court correctly held that a reasonable person in the employee's position would not have felt compelled to resign. The record further supports the district court's observation that the employer did not appear intent on discharging the employee and, in fact, did not appear to act as it did because of the employee's age. Substantial evidence suggests the employer made serious efforts to accommodate the employee and to prevent his dismissal.
 
 
 29
 Thus, the district court correctly concluded that the employee failed, as a matter of law, to present a prima facie rebuttable presumption of age discrimination because he failed to put forth evidence of an adverse employment action.
 
 
 30
 Even without raising a rebuttable presumption of discrimination, a plaintiff can demonstrate a prima facie case of discrimination by establishing facts via direct, circumstantial or statistical evidence which creates an inference of unlawful discrimination on the basis of age. McDonald v. Union Camp Corp., 898 F.2d 1155, 1161 (6th Cir.1990); Simpson v. Midland-Ross Corp., 823 F.2d at 940; Blackwell v. Sun Elec. Corp., 696 F.2d 1176, 1180 (6th Cir.1983).
 
 
 31
 The district court also properly found that the employee failed to make a prima facie showing of facts creating an inference of unlawful discrimination on the basis of age. Plaintiff put forth the following evidence as examples of the employer's discriminatory actions: 1) the employer gave him no established house accounts; 2) the employer assigned the employee to Youngstown, a 150 round trip drive from his home; 3) the employer forced him to work in a warehouse instead of a sales office with no secretarial support, phone listing or conference area; 4) the employer set unrealistic goals for him and, when he failed to realize them, the employer punished him; and 5) his supervisor referred to him as "a square peg in a round hole." The record, however, provides non-age related explanations for the employer's actions: 1) After corporate reorganization forced the employee out of a job, the employer created a new position for him, maintaining his high salary, in the previously undeveloped territory of Youngstown; 2) the employee had to operate from a Youngstown warehouse because the employer did not yet have a sales office in the new territory; 3) the employer gave the employee a car phone and expense account to compensate for the lack of a proper office; 4) the employer raised the employee's sales goal in the same manner that it raised the goals of other salespeople; 5) the employer disciplined the employee only after he had admittedly submitted a series of grossly inaccurate sales forecasts, which he then failed to meet with actual sales; and 6) at the point when the employee ultimately persuaded his employer that he was being treated unfairly and the employer attempted to resolve the dispute by meeting nearly all of the employee's demands, the employee resigned.
 
 
 32
 The record, construed most strongly in favor of the employee, does not support his claim of age discrimination as a matter of law. Where, as here, plaintiff's claims of age discrimination and constructive discharge are integrally linked and equally untenable because both claims contain fatal omissions of proof, the district court properly entered summary judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. at 322-323; Gagne v. Northwestern Nat. Ins. Co., 881 F.2d at 312-314.
 
 
 33
 The judgment of the district court is AFFIRMED.