*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2002 FED App. 0119P (6th Cir.)
File Name: 02a0119p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

RICHARD AGNEW; LINDA
AGNEW,
    *Plaintiffs-Appellants,*

    *v.*

BASF CORPORATION, a
Delaware corporation,
    *Defendant-Appellee.*

No. 00-1547

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 99-70816—Avern Cohn, Senior District Judge.

Argued: September 14, 2001

Decided and Filed: April 10, 2002

Before: DAUGHTREY, GILMAN, and GIBSON, Circuit
Judges.*

---

*The Honorable John R. Gibson, Circuit Judge of the United States
Court of Appeals for the Eighth Circuit, sitting by designation.

1

---

**COUNSEL**

---

**ARGUED:** Rita M. Lauer, WASINGER, KICKHAM & HANLEY, Royal Oak, Michigan, for Appellants. Cameron J. Evans, HONIGMAN, MILLER, SCHWARTZ & COHN, Bingham Farms, Michigan, for Appellee. **ON BRIEF:** Rita M. Lauer, Stephen F. Wasinger, WASINGER, KICKHAM & HANLEY, Royal Oak, Michigan, for Appellants. Cameron J. Evans, Stuart H. Teger, HONIGMAN, MILLER, SCHWARTZ & COHN, Bingham Farms, Michigan, for Appellee.

---

**OPINION**

---

JOHN R. GIBSON, Circuit Judge. Richard and Linda Agnew, husband and wife, appeal from the district court's[1] entry of summary judgment against them in their employment discrimination suit against BASF Corporation, Richard Agnew's former employer. After BASF required Agnew to comply with a performance improvement plan, Agnew found and accepted other employment, then quit his job as a salesman for BASF. Agnew and his wife sued BASF under the Michigan Elliot-Larsen Civil Rights Act, Mich. Comp. Laws § 37.2202 (2001), alleging that BASF forced Agnew to resign and that its actions were motivated by age discrimination. The district court held that the Agnews failed to produce evidence that Agnew suffered an adverse employment action, a necessary element of their case. They challenge that holding on appeal. We affirm.

Agnew was born on January 21, 1947, and he resigned from BASF on March 26, 1998, at the age of 51, after having

---

[1] The Honorable Avern Cohn, United States District Judge for the Eastern District of Michigan.

the leave time to get a different job, and then quit for good the day he reported back for duty. An employee who quits a job in apprehension that conditions may deteriorate later is not constructively discharged. Instead, the employee is obliged "not to assume the worst, and not to jump to conclusions too fast." *Garner v. Wal-Mart Stores, Inc.*, 807 F.2d 1536, 1539 (11th Cir. 1987); *see Fischaber v. General Motors Corp.*, 436 N.W.2d 386, 389 (Mich. Ct. App. 1989) (no constructive discharge where "plaintiff retired without ever inquiring into what his hourly assignment would be"); *Kocsis v. Multicare Management, Inc.*, 97 F.3d 876, 887 (6th Cir. 1996) (no adverse employment action where plaintiff assigned to new job "failed to make a real attempt to compare the two positions before she filed her discrimination claim."); *Cleverly v. Digital Equip. Corp.*, No. 92-3147, 1992 WL 317181, at *4 (6th Cir. 1992) (unpublished). Agnew's resignation was premature, *see Kocsis*, 97 F.3d at 887, and therefore he cannot make a submissible case of constructive discharge in order to establish a prima facie case of discrimination.[4] Without a prima facie case, we have no need to consider whether Agnew made a showing of pretext.

The Agnews do not contend that they have established discrimination by any method other than the *McDonnell-Douglas* method. We therefore affirm the district court's entry of summary judgment for BASF.

---

[4] The parties have not briefed the question of whether a loss of consortium claim would be proper in this case. In any case, Linda Agnew's claim is defeated by Richard Agnew's failure to establish an adverse employment action.

demotion, *e.g.*, *Wolff v. Auto. Club of Mich.*, 486 N.W.2d 75, 80 (Mich. Ct. App. 1992). In contrast, we have held that criticism in performance reviews and institution of performance improvement plans, alone, do not constitute objectively intolerable conditions. In *Caslin v. General Electric Co.*, 696 F.2d 45 (6th Cir. 1982), an employee received a less than desirable performance rating and was made subject to a three-month improvement program. The rating did not jeopardize his job, although it did indicate there was little hope of further advancement. The employee quit and sued for age discrimination. We held that the employee produced no evidence of intolerable working conditions sufficient to create a jury case of constructive discharge. *Id.* at 46. Similarly, in an unpublished opinion,[3] we held that receipt of a "fair" performance rating was not an adverse employment action. *See Johnson v. Rockwell Internat'l*, No. 93-6487, 1995 WL 25424, at *3 (6th Cir. 1995).

Agnew argues that termination would have been the inevitable result of the Performance Improvement Plan. The Plan did mention the possibility of termination in the event that Agnew did not complete the Plan "with an acceptable level of performance," but that possibility was contingent on future developments, rather than being a present plan or decision. We have stated in an unpublished case, "An employer does not constructively discharge an employee simply by advising him that he must be productive in order to retain his new job." *Bielert v. Northern Ohio Properties*, No. 87-4031, 1988 WL 125357, at *5 (6th Cir. 1988) ("Bielert's concerns about the vagaries of the proposed job and that he might be terminated in the future for poor performance are inadequate to avoid summary judgment.").

Agnew was not demoted. He enjoyed the same job with the same benefits until the day he quit. He took a leave of absence on his third day of the first Performance Plan, used

---

[3]We fully recognize that the unpublished opinions we have cited are not binding authority, but are persuasive at most. *See E.E.O.C. v. Harbert-Yeargin, Inc.*, 266 F.3d 498, 518 (6th Cir. 2001).

worked there as a salesman for more than twenty years. BASF sells agricultural chemicals. In 1996 BASF acquired a portion of Sandoz Agricultural, Inc., and BASF's Michigan sales force increased from two sales representatives to four. The two new sales representatives were both younger than Agnew. Some reduction in force was planned in conjunction with the Sandoz acquisition. BASF used two systems to rank the employees to decide whom to keep after the acquisition. Under one system, Agnew was ranked seventy-fifth out of 80 sales representatives, and under the other system, he was fifty-sixth. At the beginning of 1997, Agnew received an annual review for 1996 that contained mixed results. In some respects, Agnew was assessed as good or very good, but in a number of areas, the report concluded that Agnew needed improvement. In one area Agnew was rated unsatisfactory. Agnew objected to the evaluation in writing on several grounds.

Over the course of 1997, Agnew's supervisor received various complaints from customers, which the supervisor took to be poor reflections on Agnew's performance. Agnew disputes whether he was to blame for the customers' dissatisfaction, a question which we need not resolve. The situation simmered throughout the year, and in November 1997, BASF placed Agnew on a Performance Improvement Plan. The Plan was a list of "short-term objectives . . . important to [BASF's] current business that need to be addressed by the employee." The Plan was to last through April 30, 1998. According to the memo accompanying the Plan, if Agnew were to fail to complete the Plan or to make good progress during the term of the Plan, then BASF reserved the right to discipline Agnew, "up to, and including, termination." Agnew signed the Plan document and returned it on November 11, 1997, with a note saying he did not "fully agree" with the details of the Plan, but would "to the best of my ability, comply with all the requests put forward, and more."

Two days later, on November 13, Agnew went on a leave of absence, which he testified was necessitated by

"[e]motional stress and break down."  While on leave, he applied and interviewed for a job with First Data Corporation. First Data offered him a job and he accepted it.  During the leave, BASF paid Agnew his full salary and benefits.  Agnew returned to work with BASF on March 26, 1998, to take up his old duties.  Agnew's supervisor presented him with a new Performance Improvement Plan, revised to reflect new developments since Agnew had gone on leave.  Agnew reviewed the Plan and told the supervisor that the goals were unobtainable.  Agnew resigned that day.

Agnew filed this suit in Michigan state court alleging that BASF had constructively discharged him by making his working conditions intolerable and that Agnew's age was a "motive and factor" in BASF's decision to do so.  Linda Agnew joined with a derivative claim for loss of consortium. BASF removed the case to the United States District Court for the Eastern District of Michigan and moved for summary judgment.   The district court granted BASF summary judgment because the Agnews failed to adduce evidence that Agnew was constructively discharged or that BASF's proffered reasons for its actions were pretextual.  On appeal, the Agnews challenge both these determinations.

We review a grant of summary judgment de novo. *Logan v. Denny's, Inc.*, 259 F.3d 558, 566 (6th Cir. 2001).  Summary judgment is appropriate if the record before the district court shows there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  *Id.*; Fed. R. Civ. P. 56(c).

The Michigan Elliott-Larsen Civil Rights Act prohibits employers from discriminating against individuals with respect to employment, compensation, or a term, condition, or privilege of employment because of age (or a number of other prohibited reasons).  Mich. Comp. Laws § 37.2202 (2001). Michigan courts analyze age discrimination claims based on

circumstantial evidence under the same *McDonnell-Douglas*[2] burden-shifting framework used in federal discrimination cases.  *Town v. Michigan Bell Telephone Co.*, 568 N.W.2d 64, 67-68 (Mich. 1997).  Under this framework an employee can make a prima facie case of age discrimination by showing that he or she belonged to a protected class and was qualified for the job, yet suffered an adverse employment action and, finally, that others, similarly situated but outside the protected class, were "unaffected by the employer's adverse conduct." *Id.*

Agnew contends that he has satisfied the requirement of an adverse employment action by establishing that BASF constructively discharged him by unfairly criticizing his performance and instituting the Performance Improvement Plans.  Michigan law recognizes constructive discharge as an adverse employment action.  *Champion v. Nationwide Security, Inc.*, 545 N.W.2d 596, 600 (Mich. 1996).  "[A] constructive discharge occurs only where an employer or its agent's conduct is so severe that a reasonable person in the employee's place would feel compelled to resign." *Id.*  We gauge whether an employer has constructively discharged an employee by determining whether the employee's working conditions were intolerable, by objective standards. *Jacobson v. Parda Fed. Credit Union*, 577 N.W.2d 881, 884-85 (Mich. 1998).  If so, we then inquire into whether the employer imposed these conditions with intent to cause the employee to quit or at least whether the employer reasonably should have foreseen the conditions would lead to the employee's resignation.  *Jenkins v. Southeastern Mich. Chap. Am. Red Cross*, 369 N.W.2d 223, 229 (Mich. Ct. App. 1985).  *See generally Logan*, 259 F.3d at 568-69 (constructive discharge requires both employer's deliberate creation of intolerable conditions and intention to force resignation).

Examples of intolerable conditions are rape by a supervisor, *Champion*, 545 N.W.2d at 600, and, more commonly,

---

[2]*McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).