NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 18a0059n.06

No. 17-5603

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| MELVIN BROWN, JR., | ) | |
| | ) | **FILED** |
| Plaintiff-Appellant, | ) | Feb 01, 2018 |
| | ) | DEBORAH S. HUNT, Clerk |
| v. | ) | |
| | ) | **ON APPEAL FROM THE** |
| METROPOLITAN GOVERNMENT OF | ) | **UNITED STATES DISTRICT** |
| NASHVILLE AND DAVIDSON COUNTY, | ) | **COURT FOR THE MIDDLE** |
| | ) | **DISTRICT OF TENNESSEE** |
| Defendant-Appellee. | ) | |

BEFORE: GUY, GIBBONS, and COOK, Circuit Judges.

**JULIA SMITH GIBBONS, Circuit Judge.** Lieutenant Melvin Brown, a police officer in the Metro Nashville Police Department, alleges that the MNPD and Chief of Police Steve Anderson created a hostile work environment amounting to a constructive discharge and discriminated against him on account of his age by imposing work restrictions and a disproportionate suspension that was not imposed on similarly situated younger officers. Brown, however, has failed to present any direct evidence of age-related bias, to identify a similarly situated individual who received different treatment, to prove by a preponderance of the evidence that the reasons offered for his discipline were pretextual, or to even sufficiently allege a hostile work environment. Accordingly, we affirm the district court's grant of summary judgment in favor of the Metropolitan Government of Nashville and Davidson County.

I.

Lieutenant Melvin Brown (referred to throughout as "M. Brown") was a police officer in the Metro Nashville Police Department (the "MNPD") for thirty years, serving at the rank of lieutenant from July 1998 until he retired in July 2014. During his career as a police officer, M. Brown taught use of force at the MNPD Academy and was qualified as an expert witness in police use of force, and he acknowledges being an expert on the subject.

In January 2014, while working as a Shift Commander for the Central Patrol Precinct, M. Brown received a use of force report (an MNPD 108 Form) and associated video documenting an arrest performed on December 3, 2013 by Officer Byron DeWalt. Before being received by M. Brown, the report had been reviewed and approved by Sergeant Brian Brown ("B. Brown"), who had initially submitted the report to Lieutenant Warren McConkey for review and approval. McConkey reviewed the report but had been transferred to a different precinct before he was able to sign the report as an approving supervisor. As a result, the responsibility fell on M. Brown to review the use of force report at the lieutenant level.

M. Brown reviewed the use of force report and associated video, and he signed the report as an approving supervisor without making any comments or notations of concerns about the officer's use of force. M. Brown then submitted the use of force report to his supervisor, Commander Jason Reinbold. Reinbold initially felt comfortable with the use of force after reading the report, but upon viewing the video of the incident, he became concerned with DeWalt's behavior and with inconsistencies between the narrative in the report and the video of the incident. The matter was subsequently referred to the Office of Professional Accountability ("OPA") within the MNPD.

OPA Lieutenant Jerry Hertenstein performed an investigation of the incident. As part of his investigation, Hertenstein interviewed M. Brown on February 13, 2014. During the interview, M. Brown provided Hertenstein with his curriculum vitae, "indicating that he had been qualified as an expert witness in the area of police use of force." DE 22, Hertenstein Decl., Page ID 223; DE 31, Reply to MNPD's Statement of Facts, Page ID 558. Additionally, M. Brown stated during the interview that he had watched the use of force video with DeWalt's attorney after receiving a notice of complaint from the OPA, and he questioned Hertenstein regarding the identity of the individual bringing the policy violation charge against him.

Hertenstein also interviewed B. Brown and McConkey as part of his investigation. Neither B. Brown nor McConkey produced a list of their credentials as use of force experts, indicated they had watched the use of force video with DeWalt's attorney, or questioned Hertenstein about the identity of the officer charging them with a policy violation. At the conclusion of his investigation, Hertenstein determined that DeWalt had violated the MNPD use of force policy and that B. Brown, M. Brown, and McConkey had been deficient in performance of their duties by approving—or in the case of McConkey, failing to note concerns with—the report in light of the discrepancies between it and "what appeared on video to be clear violations of MNPD's use of force policy." DE 22, Hertenstein Decl., Page ID 223.

Police Chief Steve Anderson listened to the investigative interviews and reviewed the OPA investigative report before determining that M. Brown had exercised "poor judgment in approving an improper use of force, act[ed] in a cavalier and disrespectful manner during the investigation process, [and was continuing to] refus[e] to accept any responsibility for his decision." DE 24, Anderson Decl., Page ID 295–96. In contrast, Anderson did not find any "disrespectful tone" in the interviews of B. Brown and McConkey and did not have the same

level of concern for their behavior because—unlike M. Brown—they had not been "dismissive of the investigative process." *Id.* at 296.

As he had requested prior to the investigation, M. Brown was transferred to the Warrants Division on March 1, 2014. Due to his concerns regarding M. Brown's approval of the use of force and his conduct during the OPA investigation, Anderson placed certain work restrictions on M. Brown while he was in the Warrants Division. These restrictions included that M. Brown could not drive an MNPD vehicle, could not perform any work in the field, could not leave the office without permission, could not perform any off-duty work, could not perform any extra jobs without reapplying for them, and could not work overtime on extra events. Anderson explained his imposition of these restrictions, stating "I felt a need to control, one, his actions; two, his influence on other people." DE 30-10, Anderson Depo. Tr., Page ID 530. M. Brown asserts that because of these restrictions, he felt unable to perform his job and was concerned about his loss of income. M. Brown does not recall Anderson ever mentioning his age while placing work restrictions on him. Following his transfer and while under the work restrictions, M. Brown's base pay remained the same as it had been before the transfer, and some of the restrictions were lifted before he retired.

B. Brown did not receive any work restrictions.[1] When asked why he did not impose work restrictions on B. Brown, Anderson stated that he "did not see a need to." *Id.* at 533–34.

In addition to the work restrictions, Captain Randy Hickerson, M. Brown's supervisor in the Warrants Division, recommended a three-day suspension for M. Brown, which was approved by Anderson. M. Brown agreed to the three-day suspension after his charge was revised to a violation of the MNPD's "Responsibility" policy. B. Brown's and McConkey's supervisors recommended two-day suspensions for each of them, but their respective counsels negotiated the

---

[1] It is unclear from the record whether McConkey received any work restrictions.

recommended suspensions down to one day each. Anderson also approved these one-day suspensions. At the time the suspensions were imposed, B. Brown was 39 years old, McConkey was 44 years old, and M. Brown was 57 years old.

M. Brown retired from the Warrants Division on July 1, 2014, four months after his transfer. M. Brown admits that he does not recall Hickerson or any other individuals who worked in the Warrants Division ever commenting on his age or pressuring him to retire during his time there.

M. Brown filed a complaint on December 4, 2015, alleging that Anderson created a hostile work environment amounting to constructive discharge and discriminated against him based on his age in violation of the Age Discrimination in Employment Act. Specifically, M. Brown alleges that Anderson treated him differently than B. Brown and McConkey by imposing the three-day suspension and work restrictions and that his work restrictions prevented him from performing his job, forcing him to resign. Following briefing by both parties, the district court granted summary judgment in favor of the Metropolitan Government on both counts. M. Brown appealed the ruling to this court.

## II.

This court reviews a district court's grant of summary judgment *de novo*. *Kalich v. AT&T Mobility, LLC*, 679 F.3d 464, 469 (6th Cir. 2012). Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In considering a motion for summary judgment, the court must "draw all reasonable inferences in favor of the nonmoving party." *Int'l Union v. Cummins, Inc.*, 434 F.3d 478, 483 (6th Cir. 2006) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). The court then asks "whether the

evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986).

III.

M. Brown contends that the district court erred in granting summary judgment by ignoring genuine issues of material fact in the record relating to both his hostile work environment and age discrimination claims and by misapplying the burden of proof for discrimination claims outlined in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). For the reasons addressed below, we find M. Brown's arguments are without merit and affirm the ruling of the district court.

A.

To establish a prima facie case of hostile work environment under the Age Discrimination in Employment Act (the "ADEA"), the plaintiff must show: (1) he was 40 years or older at the time of the alleged harassment; (2) he was subjected to harassment, either through words or actions, based on his age; (3) the harassment unreasonably interfered with his work performance and created an objectively intimidating, hostile, or offensive work environment; and (4) there is some basis for liability on the part of the employer. *Crawford v. Medina Gen. Hosp.*, 96 F.3d 830, 834–35 (6th Cir. 1996). "[I]n order for harassment to be actionable, 'it must be sufficiently severe or pervasive to alter the conditions of [the victim's] employment and create an abusive working environment.'" *Id.* at 835 (quoting *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 67 (1986)) (second alteration in original). Further, "[a] hostile-environment constructive discharge claim entails something more: A plaintiff who advances such a compound claim must show working conditions so intolerable that a reasonable person would have felt compelled to resign." *Pennsylvania State Police v. Suders*, 542 U.S. 129, 147 (2004).

M. Brown's claim fails both the second and third prongs of a prima facie case of hostile work environment. Regarding the second prong, M. Brown has put forth no evidence showing that his suspension or work restrictions were based on his age. He has failed to identify a single instance when anyone at the MNPD mentioned his age, let alone harassed him based on his age. Moreover, he has expressly admitted that he cannot recall Anderson or any other MNPD officer ever commenting on his age or telling him he should retire. Indeed, the only support M. Brown offers for his claim is his own subjective belief that his discipline was imposed on him because of his age. Accordingly, M. Brown has failed to make a prima facie case by showing that any harassment he suffered was based upon his age. *See Speck v. City of Memphis*, 370 F. App'x 622, 626 (6th Cir. 2010) (rejecting hostile work environment claim where plaintiff failed to present evidence that the harsh enforcement of policies was based on plaintiff's age); *see also Peecook v. Nw. Nat'l Ins. Grp.*, No. 96-4318, 1998 WL 476245, at *3 (6th Cir. Aug. 3, 1998) (finding plaintiff failed to establish the second prong of a prima facie case because one statement that "perhaps you are too old to change" was too amorphous to show the harassment was age-based).

Regarding the third prong of a hostile work environment prima facie case, M. Brown has failed to show that his work environment was objectively intimidating, hostile, or offensive. The only actions M. Brown contends constituted harassment were the work restrictions placed on him when he transferred to the Warrants Division, particularly his inability to drive an MNPD vehicle or to leave the office without permission. Furthermore, he admits that he "had no problems working for Warrants Division Captain Hickerson," DE 31, Reply to MNPD's Statement of Facts, Page ID 553, and that "[t]he individuals who worked with and for [him] in the Warrants Division did not make comments about his age." *Id.* at 554. Therefore, while his work

restrictions may have interfered with his ability to perform his job, without other hostile or offensive behavior, they do not create an objectively intimidating, hostile, or offensive work environment. *See Agnew v. BASF Corp.*, 286 F.3d 307, 310 (6th Cir. 2002) ("[C]riticism in performance reviews and institution of performance improvement plans, alone, do not constitute objectively intolerable conditions."); *see also Ferguson v. Snow*, 185 F. App'x 456, 463 (6th Cir. 2006) (finding that repeated denials of promotions with only one alleged incident of an overtly discriminatory remark "standing alone, is not sufficient to establish a hostile work environment"). Any findings in favor of M. Brown on his proffered factual issues—which can be cumulatively summarized as whether the work restrictions prevented him from properly performing his job—would not change this conclusion. Accordingly, M. Brown has failed to establish either prong two or prong three of his hostile work environment claim.

Because M. Brown has failed to present sufficient evidence to support even a prima facie case of hostile work environment, his claim of constructive discharge premised on a hostile work environment fails. *See Suders*, 542 U.S. at 149 ("Creation of a hostile work environment is a necessary predicate to a hostile-environment constructive discharge case."). Moreover, for the same reasons that M. Brown's work restrictions and suspension did not constitute an objectively intimidating, hostile, or offensive work environment, they also did not make the performance of his job "so difficult or unpleasant that a reasonable person in the employee's shoes would have felt compelled to resign." *Goldmeier v. Allstate Ins. Co.*, 337 F.3d 629, 635 (6th Cir. 2003) (quoting *Kocsis v. Multi-Care Mgmt., Inc.*, 97 F.3d 876, 887 (6th Cir. 1996)); *see Smith v. Henderson*, 376 F.3d 529, 534 (6th Cir. 2004) ("Dissatisfaction with work assignments, a feeling of being unfairly criticized, or difficult or unpleasant working conditions are not so intolerable as to compel a reasonable person to resign.") (quoting *Carter v. Ball*, 33 F.3d 450, 459 (4th Cir.

1994)). Accordingly, the district court correctly granted summary judgment on M. Brown's hostile-environment constructive discharge claim.

B.

The Metropolitan Government is also entitled to summary judgment on M. Brown's age discrimination claim. The ADEA makes it unlawful for an employer "to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age . . . ." 29 U.S.C. § 623(a). A plaintiff bringing an ADEA claim "must prove that age was a determining factor in the adverse action that the employer took against him or her." *Phelps v. Yale Sec., Inc.*, 986 F.2d 1020, 1023 (6th Cir. 1993) (citing *Kraus v. Sobel Corrugated Containers, Inc.*, 915 F.2d 227, 299–30 (6th Cir. 1990)). The Supreme Court has held that the ADEA does not permit "a mixed-motives" claim; instead, a plaintiff alleging a violation of § 623(a) must prove by a preponderance of the evidence that "age was the 'but-for' cause of the employer's adverse action." *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 177 (2009). The plaintiff may do so using either direct or circumstantial evidence. *Id.* at 177–78.

"Direct evidence of discrimination is that evidence which, if believed, requires the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions." *Allen v. Highlands Hosp. Corp.*, 545 F.3d 387, 394 (6th Cir. 2008) (quoting *Wexler v. White's Fine Furniture, Inc.*, 317 F.3d 564, 570 (6th Cir. 2003) (en banc)). Circumstantial evidence "is proof that does not on its face establish discriminatory animus, but does allow a factfinder to draw a reasonable inference that discrimination occurred." *Geiger v. Tower Auto.*, 579 F.3d 614, 620 (6th Cir. 2009) (quoting *Wexler*, 317 F.3d at 570).

As discussed above in relation to his hostile work environment claim, M. Brown has failed to present any direct evidence showing age was a determining factor in the imposition of

his suspension or work restrictions. Moreover, on appeal, M. Brown does not contend that he has made a prima facie case of age discrimination based on direct evidence, but rather asserts that the district court erred in finding he had failed to make such a case using circumstantial evidence.

This Circuit uses the *McDonnell Douglas* framework to analyze ADEA claims based on circumstantial evidence. *Id.* at 622; *see generally McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).

> In order to establish a prima facie case of age discrimination using circumstantial evidence under the *McDonnell Douglas* framework, a plaintiff must show that: (1) he is a member of the protected class, that is, he is at least forty years of age; (2) he was subjected to an adverse employment action; (3) he was qualified for the position; and (4) he was treated differently from similarly situated employees outside the protected class.

*Mitchell v. Vanderbilt Univ.*, 389 F.3d 177, 181 (6th Cir. 2004) (citing *McDonnell Douglas*, 411 U.S. at 802). Once a plaintiff sets forth a prima facie case of age discrimination, "the burden of production shifts to the defendant to articulate a non-discriminatory reason for its action." *Burzynski v. Cohen*, 264 F.3d 611, 622 (6th Cir. 2001). If a defendant has articulated a legitimate non-discriminatory reason for its action, the burden shifts back to the plaintiff to demonstrate by a preponderance of the evidence that the defendant's stated reason was a pretext for age discrimination. *Id.*

It is undisputed that M. Brown was over 40 years old at the time of the alleged discrimination, that his suspension and work restrictions were adverse employment actions, and that he was qualified for his position as a lieutenant. Accordingly, he has satisfied the first three prongs of the prima facie test. *See Mitchell*, 389 F.3d at 181. However, M. Brown is unable to

show that he was treated differently from a similarly situated, significantly younger employee, failing the fourth prong.[2]  *See id.*

In order to satisfy the fourth prong of the *McDonnell Douglas* test, the plaintiff is "required to prove that all of the *relevant* aspects of his employment situation [are] 'nearly identical' to those of [the non-protected employee's] employment situation."  *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 352 (6th Cir. 1998) (quoting *Pierce v. Commonwealth Life Ins. Co.*, 40 F.3d 796, 802 (6th Cir. 1994)).  In order to be similarly situated in the disciplinary context, an employee "must have dealt with the same supervisor, have been subject to the same standards and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it.'"  *Id.* (quoting *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 583 (6th Cir. 1992)).

M. Brown contends that he was similarly situated to both B. Brown and McConkey, but there are numerous relevant aspects of their situations that make neither B. Brown nor McConkey a similarly situated employee.  First, McConkey is not similarly situated because he never actually approved the offending use of force report—the initial misconduct that led to the discipline.  *See Clayton v. Meijer, Inc.*, 281 F.3d 605, 611 (6th Cir. 2002) (noting that the "ultimate question" for whether employees are similarly situated is whether their acts against the employer were of "comparable seriousness") (quoting *McDonald v. Santa Fe Transp. Co.*, 427 U.S. 273, 283 n.11 (1976)).  Second, B. Brown is not similarly situated because of the significant difference in his rank and experience, as he had only been a sergeant for approximately a year and a half, while M. Brown had been at the higher rank of lieutenant for 15

---

[2] "In age discrimination cases, . . . the fourth element is modified to require replacement not by a person outside the protected class, but merely replacement by a significantly younger person."  *Grosjean v. First Energy Corp.*, 349 F.3d 332, 335 (6th Cir. 2003).  "Age differences of ten or more years have generally been held to be sufficiently substantial to meet the requirement of the fourth part of [an] age discrimination prima facie case."  *Id.* at 336.

years prior to the incident. Further factors supporting the conclusion that neither McConkey nor B. Brown are similarly situated to M. Brown include that they had their penalties recommended by different supervisors than M. Brown and that—unlike M. Brown—neither was an expert on use of force or had taught use of force at the Academy. Accordingly, M. Brown has failed to identify a differently treated, similarly situated employee and thus, failed to establish a prima facie case of age discrimination using circumstantial evidence.

Even if McConkey or B. Brown were similarly situated to M. Brown, however, M. Brown's claim would still fail because he has not demonstrated by a preponderance of the evidence that the MNPD's explanation for his discipline was pretextual. A plaintiff can demonstrate pretext by showing the employer's reason for the adverse employment action "(1) has no basis in fact, (2) was not the actual reason, or (3) is insufficient to explain the employer's action." *White v. Baxter Healthcare Corp.*, 533 F.3d 381, 393 (6th Cir. 2008); *see also Manzer v. Diamond Shamrock Chems. Co.*, 29 F.3d 1078, 1084 (6th Cir. 1994). "Regardless of which option is used, the plaintiff retains the ultimate burden of producing sufficient evidence from which the jury could reasonably reject [the defendants'] explanation and infer that the defendants intentionally discriminated against him." *Johnson v. Kroger Co.*, 319 F.3d 858, 866 (6th Cir. 2003) (quoting *Braithwaite v. Timken Co.*, 258 F.3d 488, 493 (6th Cir. 2001) (alteration in original) (internal quotation marks omitted)).

The MNPD has asserted that M. Brown's different treatment resulted from his failure to bargain about the length of his suspension and from Anderson's concerns regarding M. Brown's behavior during the OPA investigation. This explanation has support in the record. McConkey and B. Brown both negotiated down their suspensions, while M. Brown accepted his own without challenge. Further, unlike McConkey and B. Brown, during his OPA interview,

M. Brown brought his curriculum vitae asserting his expertise in police use of force, stated that he had watched the use of force video with DeWalt's attorney, and questioned the interviewer regarding who had brought the violation charge against him. As Anderson explained, M. Brown's "cavalier and disrespectful manner during the investigation process" indicated that he had not accepted responsibility for his actions, necessitating additional discipline. DE 24, Anderson Decl., Page ID 294–96. In contrast, other than M. Brown's subjective belief that his different treatment was the result of his age, nothing in the record or in M. Brown's briefs indicates that the MNPD's proffered reasons have no basis in fact, are not the actual reason for the treatment, or are insufficient to explain his discipline. This subjective belief, without other support, does not show by a preponderance of the evidence that MNPD's reasons for imposing additional discipline on M. Brown were pretextual. Accordingly, the district court correctly granted summary judgment on M. Brown's age discrimination claim.

IV.

For the above reasons, we affirm the district court's order granting summary judgment to the Metropolitan Government of Nashville and Davidson County.