NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 05a0265n.06
Filed: April 7, 2005

No. 03-4133

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

| | |
|---|---|
| JOHN A. ROSSI, | ) |
| | ) |
|     Plaintiff-Appellant, | ) |
| | ) ON APPEAL FROM THE |
| v. | ) UNITED STATES DISTRICT |
| | ) COURT FOR THE NORTHERN |
| ALCOA, INC; ALCOA WHEEL & FORGED | ) DISTRICT OF OHIO |
| PRODUCTS; and MIKE MARTIN, | ) |
| | ) |
|     Defendants-Appellees. | |

BEFORE:    MARTIN and BATCHELDER, Circuit Judges; O'MEARA, District Judge.[*]

**JOHN CORBETT O'MEARA, District Judge.**  John Rossi, a current employee of Alcoa, Inc., ("Alcoa") appeals the district court's order granting summary judgment to Alcoa and Mike Martin, his former supervisor, on Rossi's claims of sex discrimination, disability discrimination, sexual harassment, disability harassment, and retaliation under Title VII of the Civil Rights Act of 1964 and the Americans with Disabilities Act of 1990 ("ADA"), as well as his claim of intentional infliction of emotional distress.

## FACTS AND PROCEDURAL HISTORY

Rossi, a white male, was hired by Alcoa in 1996 as an hourly worker. In January 1999 he was promoted to unit supervisor in the chip and trim department. Two years later Mike Martin became his supervisor; and, not long after, Martin became critical of Rossi's job performance.

---

[*]The Honorable John Corbett O'Meara, United States District Court for the Eastern District of Michigan, sitting by designation.

Martin testified that he observed various problems in Rossi's work and instructed him to provide better constructive feedback to other Alcoa employees.

Rossi subsequently complained to Sean Mee, Alcoa's human relations supervisor, stating that Martin was harassing him and singling him out for unfair treatment. Rossi said that as a result of the unfair treatment, he was becoming physically ill and that if Mee did not resolve the conflict, he would like to resign his position and return to the hourly workforce.

In February 2002 Rossi met with Mee and superintendent Ed Gonzales. Martin, who was also present at the meeting, gave Rossi the option of remaining in his supervisory position and being put under review or returning to the hourly workforce. Rossi considered this a threat; he deduced that if he were put under review he would ultimately be fired. He decided that he did not want to be put under review and would rather be returned to the hourly workforce. In his lawsuit he alleges that he was constructively discharged from his salaried position.

Upon Rossi's decision to leave his salaried position, Martin assigned Roger Beck to replace him for the weekend. Martin then assigned Laura Daum, a union employee, to fill the position as a temporary assigned supervisor. Ultimately, Martin permanently placed Billy Meyers, a salaried employee, in Rossi's former position.

When Rossi became an hourly employee, he was put on the day shift in the chip and trim department. He soon became aware that he could be transferred to the night shift and was concerned that he might start having problems with sleep apnea. On February 12, 2002, he saw Dr. Gundapaneni, his physician, who wrote a disability note which stated, "pt can only work day shift for 3 months."

The note was reviewed by Dr. Singer, Alcoa's company physician, who contacted Dr. Gundapaneni. Gundapaneni told Singer that Rossi was currently experiencing "chronic sinus and laryngeal difficulties" and was having a "lot of congestion and difficulty breathing." Dr. Gundapaneni suggested that Rossi might also be evaluated for sleep apnea. Rossi was diagnosed in 2002 for sleep apnea and given medication. He testified that when he takes his medication he sleeps well. Dr. Singer concluded that Rossi and Dr. Gundapaneni provided no medical justification for granting the requested restriction. He informed Rossi that under the terms of the collective bargaining agreement he could see a third party physician chosen by Singer and Gundapaneni to resolve their disagreement. Rossi did not see that physician, however, and started working the night shift in March 2002. He continues to work that shift today.

Rossi filed this lawsuit against Alcoa and Martin in June 2002. His complaint makes the following allegations: (1) he was harassed, mistreated, and constructively discharged from his position as supervisor based on his gender in violation of Title VII of the Civil Rights Act; (2) Alcoa and Martin violated the ADA by failing to afford him a reasonable accommodation for his sleep apnea after he was transferred to the hourly workforce; (3) Martin harassed and retaliated against him on the basis of his gender and disability in violation of Ohio's discrimination statute, § 4412.02 of the Ohio Revised Code; and (4) he was retaliated against on the basis of his disability for filing a claim with the Equal Employment Opportunity Commission alleging gender discrimination. Finally, Rossi alleged that Martin was liable for intentional infliction of emotional distress under common law.

## STANDARD OF REVIEW

We review *de novo* the district court's grant of summary judgment. *Williams v. Gen. Motors Corp.*, 187 F.3d 553, 560 (6th Cir. 1999). Summary judgment is appropriate where the evidence shows "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56( c). In deciding an appeal of a grant of summary judgment, we view the evidence and draw all reasonable inferences in favor of Rossi, the non-moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). We weigh the evidence not to determine the truth of the matter but to determine whether there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). In this case a genuine issue for trial exists if there is sufficient evidence upon which the jury could reasonably find for Rossi on any of his claims.

## LAW AND ANALYSIS

### A.      Gender Discrimination

Title VII of the Civil Rights Act of 1964 prohibits an employer from discriminating "against any individual with respect to his compensation, terms, conditions or privileges of employment because of such individual's race, color, religion, sex or national origin." 42 U.S.C. § 2000e-2(a)(1). In a Title VII action the plaintiff has the burden of proving a *prima facie* case. *Thurman v. Yellow Freight Sys., Inc.*, 90 F.3d 1160, 1166 (6th Cir. 1996). In a "reverse" discrimination case such as this one, in which the plaintiff does not belong to a traditionally protected class but instead belongs to a majority group, a *prima facie* case is established upon a showing that "'background circumstances support the suspicion that the defendant is that unusual employer who discriminates

against the majority' . . . and upon a showing that the employer treated differently employees who were similarly situated but not members of the protected group." *Yeager v. Gen. Motors Corp.*, 265 F.3d 389, 397 (6th Cir. 2001) (quoting *Murray v. Thistledown Racing Club, Inc.*, 770 F.2d 63, 67 (6th Cir. 1985)).

To show that Alcoa is the unusual employer who discriminates against the majority, Rossi argues that female supervisors received favorable treatment. He makes the following allegations: (1) Martin disciplined female supervisors differently; (2) he was publicly criticized and embarrassed for no reason; (3) Martin allowed female employees to use the office to perform supervisory chores but refused to allow Rossi to do so; (4) Martin allowed a female supervisor to make a lateral move back to her original position when her performance was questioned.

Rossi also contends, though, that other male supervisors received favorable treatment. He contends that Martin chastised him for awarding a paid lunch to an employee but ignored the same conduct by another male employee. Rossi testified that when he complained to his human relations supervisor about Martin's treatment, he also complained that Martin treated both female and male employees more favorably.

The district court found that Rossi complained that he received worse treatment than other supervisors, male or female. Because he failed to show any evidence of background circumstances that "support the suspicion that the defendant is that unusual employer who discriminates against the majority," we will affirm the district court's conclusion on this issue.

## B.      Failure to Accommodate a Disability

Rossi claims that Defendants violated the ADA by failing to accommodate his sleep apnea. To prevail on this calm, Rossi must show that he is a qualified individual with a disability. 42 U.S.C. § 12112(a). A "disability" is defined to include "a physical or mental impairment that substantially limits one or more major life activities . . . ." 42 U.S.C. § 12102(2)(A). The mere fact that Plaintiff has a recognized physical or mental impairment is not sufficient to establish a cognizable disability; Rossi must also show that his impairment substantially limits a major life activity.

Rossi submits as evidence of his disability a 2002 diagnosis of sleep apnea, anxiety, and other conditions; however, he provides no evidence that the impairment substantially limited him in the performance of a major life activity. We have held that "getting between 2 and 4 hours of sleep per night, while inconvenient, simply lacks the kind of severity we require of an ailment before we will say that the ailment qualifies as a substantial limitation under the ADA." *Boerst v. Gen. Mills Operations, Inc.*, Case No. 00-3281, 2002 WL 59637, *cert. denied*, 535 U.S. 1095 (2002). Moreover, we must consider whether there is a substantial limitation in light of any corrective measures, such as medication, that plaintiff Rossi uses. *Sutton v. United Air Lines, Inc.*, 527 U.S. 471, 482 (1999) ("Looking at the Act as a whole, it is apparent that if a person is taking measures to correct for, or mitigate, a physical or mental impairment, the effects of those measures—both positive and negative—must be taken into account when judging whether that person is 'substantially limited' in a major life activity and thus 'disabled' under the Act."). Rossi testified

that he sleeps well when he takes his medication; therefore, he is not substantially limited by his condition, which fails to rise to the level of a disability. Thus, we will affirm on Rossi's ADA claim.

**C.      State Claim for Gender and Disability Discrimination**

Because Rossi fails to meet the federal standards for his discrimination claims, he necessarily fails to meet the state standards as well. *See Plumbers & Steamfitters Joint Apprenticeship Comm. v. Ohio Civil Rights Comm'n*, 421 N.E. 2d 128, 131 (Ohio 1981) (federal case law applying Title VII is generally applicable to cases involving Ohio Rev. Code Chapter 4112).

**D.      Retaliation**

Rossi claims that Defendants retaliated against him "for filing a previous EEOC charge alleging discrimination due to his gender." To establish a *prima facie* case of retaliation under Title VII, Rossi must show that: (1) he was engaged in protected Title VII activity; (2) he was subjected to an adverse employment action; and (3) there is a causal link between the protected activity and the adverse employment action. *Canitia v. Yellow Freight Sys., Inc.,* 903 F.2d 1064, 1066 (6th Cir. 1990).

Rossi's claim fails because he suffered no adverse employment action. Though Rossi contends he was constructively discharged from his supervisory position, it is clear that he was actually given the option of keeping that position. He claims that this option was not real because in order to keep his position he would have been subjected to performance review and would ultimately have been terminated. This contention does not meet the standard for adverse employment action. Although constructive discharge may constitute an adverse employment action, a plaintiff cannot show constructive discharge merely on the basis of his own belief or suspicion that

he would someday be terminated. *Agnew v. BASF Corp.*, 286 F.3d 307, 310 (6th Cir. 2002). A constructive discharge occurs only when an employee shows that his employer subjected him to conduct so severe that a reasonable person in the employee's place would have felt compelled to resign. *See Koscis v. Multi-Care Mgmt., Inc.*, 97 F.3d 876, 885-886 (6th Cir. 1996). This court has held that institution of performance improvement plans does not constitute an objectively unreasonable condition sufficient to show constructive discharge. *Agnew*, 286 F.3d at 310. Therefore, we will affirm the grant of summary judgment as to plaintiff Rossi's retaliation claim.

**E.      Intentional Infliction of Emotional Distress**

Under Ohio law, a claim for intentional infliction of emotional distress requires a plaintiff to show that: (1) the defendant either intended to cause emotional distress or knew or should have known that the actions taken would result in serious emotional distress; (2) the defendant's conduct was "extreme and outrageous"; (3) the defendant's actions proximately caused psychic injury; and (4) the mental anguish suffered by the plaintiff was serious, and no reasonable person could be expected to endure it. *Ekstrom v. Cuyahoga County Comty. Coll.*, 779 N.E.2d 1067, 1076 (Ohio Ct. App. 2002).

In this case Rossi cannot show that Martin's behavior was "extreme and outrageous," which, according to the Ohio courts, must go beyond all possible bounds of decency and be regarded as atrocious and utterly intolerable in a civilized community. *Yeager v. Local Union 20*, 453 N.E.2d 666 (1983). Viewed in the light most favorable to him, Rossi claims only that Martin treated him harshly, rudely, and unfairly. This is not sufficient to support his claim as a matter of law.

Therefore, we will affirm the district court's order granting summary judgment as to Rossi's claim

of intentional infliction of emotional distress.

## <u>CONCLUSION</u>

For all of the reasons set forth above, we **AFFIRM** the order of the district court granting

summary judgment to defendants Alcoa and Martin.