OPINION
{¶ 1} Plaintiff-appellant, Laura L. Morway, filed a complaint in the Ohio Court of Claims against the State of Ohio, Bureau of Workers' Compensation, alleging Fair Labor Standards Act ("FLSA") violations, tortious wrongful discharge in violation of public policy, civil conspiracy and requested compensatory damages. The Court of Claims held an evidentiary hearing and determined that the employees were entitled to immunity and that the evidence was insufficient to establish that the employees' conduct was manifestly outside the scope of the state employment or that any actions were taken with malicious purpose, in bad faith or in a wanton or reckless manner. The Court of Claims found that the courts of common pleas do not have jurisdiction over civil actions against the employees based upon the allegations in this case. Appellant filed a notice of appeal and raises the following assignments of error:
[I.] The trial court's determination that George Durkin and Arlene Overton are entitled to immunity is contrary to law, as state law immunity determinations do not apply to claims based upon federal law.
[II.] The trial court's determination that George Durkin and Arlene Overton are entitled to immunity is against the manifest weight of the evidence.
 {¶ 2} Appellant's allegations are based upon a series of incidents, which occurred within the context of her employment at the Bureau of Workers' Compensation in the Youngstown office. Appellant was employed as a Claims Assistant but began working as an Employer Services Specialist ("ESS") in January 2003, which involves talking to employers about the premium-discount program, drug-free workplace program, conducting consultations with employers and covering the front desk in the absence of another employee, the Account Examiner 2. (Tr. at 39.) Two times she traveled to Columbus for training in late January and one week in February. During the week in February, appellant worked 44 hours and 45 minutes. She completed a request for overtime pay, but her immediate supervisor, George Durkin, who is the Risk Supervisor, denied the request and asked her to flex the time. (Tr. at 44-48.) Durkin checked with his supervisor, Arlene Overton, who is the Service Office Manager, who also denied the request. Appellant then approached the union steward, Elizabeth Chahine, who contacted the assistant administrator in Columbus and appellant was subsequently, on March 6, 2003, informed that she would receive overtime pay. (Tr. at 51-52; 147-148.)
 {¶ 3} Appellant argues that, after this incident, Durkin and Overton began to harass her and engage in retaliatory actions. The next incident occurred on March 7, 2003, when appellant was covering the front desk because the Account Examiner 2 was absent. (Tr. at 54.) Appellant testified that, at 12:30 p.m., J.J. Kovacs relieved her. She went to the restroom and then to lunch, leaving the office at 12:36 p.m. She returned just before 1:36 p.m. (Tr. at 55-56.) Durkin was seated at the front desk and, in a loud voice, began to tell her she should not extend her lunch hour beyond the allotted one hour. He said, "`Lady, what does that clock say[?]'" (Tr. at 57.) He also complained that she had not properly logged-in phone calls, although she had not been trained to do so. (Tr. at 60.) Durkin also told her to distribute the mail, which she had already done. (Tr. at 66.) Mack Beck, a security guard, was in the lobby at the time and heard the exchange between appellant and Durkin. (Tr. at 134.) Beck testified that Durkin chastised appellant in an unpleasant tone of voice and appellant was crying. (Tr. at 137; 140.)
 {¶ 4} On March 12, 2003, appellant filed a grievance concerning Durkin's behavior on March 7, and a grievance hearing was held on March 13, 2003. Durkin denied yelling at appellant. Chahine testified at the trial that she informed Overton that Beck had witnessed the incident but Overton did not discuss the issue with Beck. (Tr. at 153; 156; 140.) Overton concluded that Durkin had not acted inappropriately. (Tr. at 71; exhibit No. 3.)
 {¶ 5} Also on March 7, appellant spoke to Durkin about a customer that she had been unable to assist in reinstating his coverage. Appellant testified that she attempted to reach Durkin for assistance three times but he was away from his desk and she telephoned the Warren Service Office in an attempt to get assistance but was unsuccessful. (Tr. at 77; 80.) Durkin then instructed her as to the computer system. Appellant argues that Durkin accused her of failing to provide adequate service to the client, but Durkin and Overton failed to contact the customer to confirm their allegations.
 {¶ 6} On March 18, 2003, Durkin and Overton met with appellant for a Corrective Counseling session and to provide an action plan. Durkin testified that he had been working on this action plan since February to address things that needed attention. (Tr. at 218.) Appellant testified that she was denied union representation, even though such counseling could result in disciplinary action. Appellant contends that the action plan could not have been reasonably completed and had been implemented to cause her to fail in her position. Durkin described the corrective counseling session and the action plan as an attempt to help appellant succeed. (Tr. at 222.)
 {¶ 7} Another incident occurred on March 19, 2003, when appellant and Durkin were traveling together to an off-site location for a presentation. Appellant asked if she could visit another employer by herself the following day. Appellant described Durkin's response, as follows:
* * * And he became immediately angry and defensive. His face turned red. His eyes were erratic. He was waving his arms, and he insisted that he was going with me, that I would not be going anywhere by myself. * * *
(Tr. at 88.)
 {¶ 8} Appellant testified that Durkin frightened her and she contacted Chahine and reported workplace violence. (Tr. at 92.) Shortly after this incident, appellant took a voluntary demotion to her former position as a Claims Specialist to avoid being under Durkin's direct supervision. She contends that she was constructively discharged as an ESS.
 {¶ 9} After appellant returned to her job as a Claims Specialist, appellant received a written reprimand for failure to use good behavior, and rude and discourteous treatment of management for allegedly referring to Durkin as an "asshole." (Tr. at 264; 258.) Overton testified that she received an email message from a supervisor in appellant's area who overheard a conversation between appellant and a co-worker. Overton attempted to obtain witness statements but no one corroborated the claim. Overton conducted an investigatory interview and appellant denied making the comment, but Overton issued a written reprimand. (Tr. at 261; 264.)
 {¶ 10} Appellant argues that these incidents are indicative of retaliatory behavior by Durkin and Overton because she proved them wrong regarding the overtime issue. Durkin and Overton both denied such.
 {¶ 11} By the first assignment of error, appellant contends that the trial court erred in determining that George Durkin and Arlene Overton are entitled to immunity as state law immunity determinations do not apply to claims based upon federal law. Appellant argues that the three causes of action in the complaint are based upon federal law and the Court of Claims has no jurisdiction to determine a state employee's immunity from causes of action based upon federal laws.
 {¶ 12} In the complaint, appellant alleged in Count 1 that Durkin and Overton violated the Fair Labor Standards Act, Section 201 et seq., Title 29, U.S. Code by refusing to pay her overtime compensation and engaging in retaliatory actions resulting in her constructive discharge. Count 2 of the complaint alleged that Durkin and Overton acted in violation of "clear public policy manifested in Ohio Rev. Code § 4112.01, et seq., as well as the state and federal constitutions" which resulted in tortious wrongful discharge in violation of such public policy. (Complaint at ¶ 17.) Count 3 of the complaint alleges a civil conspiracy. The complaint seeks damages and a declaration that Durkin and Overton "acted and/or failed to act with a malicious purpose, in bad faith or in a wanton or reckless manner, and as such, immunity is waived" and they had personal liability regarding this matter. (Complaint at ¶ 3-4.)
 {¶ 13} The Court of Claims determined that appellant's "complaint alleges violations of the FLSA, the gravamen of her complaint concerns the conduct that followed; that is, allegations that on their face appear to assert state law claims." (Decision at 4.) The Court of Claims continued and found that, to the extent appellant asserted state law claims, R.C. 2743.02(F) grants exclusive, original jurisdiction to the Court of Claims to determine the immunity of the employees. Thus, the Court of Claims did not find that Durkin and Overton were immune from claims based upon federal law. It only determined that they were immune from state law claims. Appellant admitted at oral argument that her public policy claims were state law claims. While appellant contends that she asserted a claim under the FLSA in Count 1, alleging that Durkin and Overton took retaliatory actions resulting in her constructive discharge in violation of the whistle blower protections of the FLSA, Section 201 et seq., Title 29, U.S. Code the language used is language from the Ohio statute. The complaint alleged that Durkin and Overton "acted or failed to act with malicious purpose, in bad faith, or in a wanton or reckless manner." (Complaint at ¶ 13.)
 {¶ 14} Under federal law, a government official or employee is entitled to qualified immunity in performing discretionary functions unless the official or employee knew or reasonably should have known that the conduct at issue would violate a clearly established statutory or constitutional right. Harlow v. Fitzgerald (1982), 457 U.S. 800, 818,102 S.Ct. 2727. Under R.C. 9.86, the issue is whether the employee was acting outside the scope of his employment or official responsibilities, with malicious purpose, in bad faith or in a wanton or reckless manner.
 {¶ 15} The claims in Counts 2 and 3 of the complaint are state law claims. R.C. 2743.02(F) grants exclusive, original jurisdiction to the Court of Claims to determine the immunity of the employees and it is only when the Court of Claims determines that an employee has acted outside the scope of employment or acted with malicious purpose, in bad faith, or in a wanton or reckless manner, that a plaintiff may bring an action against the employees in a common pleas court. Gumpl v. Bost (1992),81 Ohio App.3d 370, 373. Thus, the Court of Claims did not err in addressing the immunity of the employees regarding the state law claims alleged in appellant's complaint. Appellant's first assignment of error is not well-taken.[1]
 {¶ 16} By the second assignment of error, appellant contends that the trial court's determination that Durkin and Overton are entitled to immunity is against the manifest weight of the evidence. R.C. 2743.02(F) provides, in pertinent part:
A civil action against an officer or employee, as defined in section109.36 of the Revised Code, that alleges that the officer's or employee's conduct was manifestly outside the scope of his employment or official responsibilities, or that the officer or employee acted with malicious purpose, in bad faith, or in a wanton or reckless manner shall first be filed against the state in the court of claims, which has exclusive, original jurisdiction to determine, initially, whether the officer or employee is entitled to personal immunity under section 9.86 of the Revised Code and whether the courts of common pleas have jurisdiction over the civil action.
R.C. 9.86 provides:
* * * [N]o officer or employee shall be liable in any civil action that arises under the law of this state for damage or injury caused in the performance of his duties, unless the officer's or employee's actions were manifestly outside the scope of his employment or official responsibilities, or unless the officer or employee acted with malicious purpose, in bad faith, or in a wanton or reckless manner.
 {¶ 17} The determination as to whether or not a person is entitled to immunity under R.C. 2743.02(F) and 9.86 is a question of law. Nease v.Medical College Hosp. (1992), 64 Ohio St.3d 396, 400. While the issue of immunity is a question of law, consideration of the specific facts is necessary. See Lowry v. Ohio State Highway Patrol (Feb. 27, 1997), Franklin App. No. 96API07-835. In this regard, matters involving credibility should be resolved by the trial court, and judgments supported by some competent, credible evidence going to all essential elements of the case will not be reversed as being against the manifest weight of the evidence. Brooks v. Ohio State Univ. (1996),111 Ohio App.3d 342, 350.
 {¶ 18} The Court of Claims determined that, even assuming that all of appellant's substantive allegations are credible and uncontroverted, the evidence was insufficient to establish that the conduct of either Durkin or Overton was manifestly outside the scope of their state employment, or that any of their actions were taken with malicious purpose, in bad faith, or in a wanton or reckless manner. "An employee's wrongful act, even if it is unnecessary, unjustified, excessive or improper, does not automatically take the act manifestly outside the scope of employment. * * * The act must be so divergent that it severs the employer-employee relationship." Elliott v. Ohio Dept. of Rehab. Corr. (1994),92 Ohio App.3d 772, 775. None of the behavior of Durkin or Overton was so divergent from their supervisory roles that it severed their employer-employee relationship. The incidents appellant contends comprise the retaliatory actions are all actions within a supervisor's duties, reprimanding an employee for returning late from lunch, doing a job properly, corrective counseling and action plans and reprimands for inappropriate behavior. While Durkin and Overton may not have performed their duties in a professional manner, these actions do not rise to the level of malicious purpose, in bad faith, or in a wanton or reckless manner.
 {¶ 19} In Marinucci v. Ohio Dept. of Transp. (Jan. 18, 2000), Franklin App. No. 99AP-500, this court defined, "malicious purpose" as involving:
8 * * [I]ll will or enmity or exercising malice, and malice can be defined as the willful and intentional design to do injury or harm to another, usually seriously, through conduct that is unlawful or unjustified. * * * Bad faith embraces more than bad judgment or negligence; it imports a dishonest purpose, moral obliquity, conscious wrongdoing, or breach of a known duty through some ulterior motive or ill will partaking of the nature of fraud. * * * Reckless conduct refers to an act done with knowledge or reason to know of facts that would lead a reasonable person to believe that the conduct creates an unnecessary risk — a risk greater than that necessary to make the conduct negligent. * * * Further, the term "reckless" is often used interchangeably with the word "wanton" and has also been held to be a perverse disregard of a known risk. * * *
 {¶ 20} "The standard for showing reckless or wanton misconduct is high. Mere negligence is not converted into wanton misconduct unless the evidence establishes a disposition to perversity on the part of the tortfeasor." Caruso v. State (2000), 136 Ohio App.3d 616, 622. The trial court specifically found Durkin and Overton credible and that their conduct was not conducted with malicious purpose, in bad faith, or in a wanton or reckless manner. We find the judgment is supported by some competent, credible evidence going to all essential elements of the case, therefore it will not be reversed as being against the manifest weight of the evidence. Appellant's second assignment of error is not well-taken.
 {¶ 21} For the foregoing reasons, appellant's two assignments of error are overruled and the judgment of the Ohio Court of Claims is affirmed.
Judgment affirmed.
Petree and McGrath, JJ., concur.
McCormac, J., retired of the Tenth Appellate District, assigned to active duty under authority of Section 6(C), Article IV, Ohio Constitution.
[1] Appellee has argued that appellant waived her right to pursue an action against Durkin and Overton pursuant to R.C. 2743.02(A)(1). This issue is not before us but is before the Mahoning County Court of Common Pleas.